UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

In re:

Christopher David Polk,                                    Chapter 11

       Debtor.                                             Case No.: 18-30913-JPS
_____/

Kapitus Servicing, Inc., formerly known as                 Ad. Pro. No. _____
Colonial Funding Network, Inc. as servicing
provider for Strategic Nationwide Funding,

       Plaintiff,
v.

Christopher David Polk,

       Defendant.
_____/

**COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT**

Kapitus Servicing, Inc., formerly known as Colonial Funding Network, Inc. as servicing provider for Strategic Nationwide Funding ("Kapitus" or the "Plaintiff") seeks to determine the debt owed it by the Debtor as non-dischargeable under 11 U.S.C. § 523(a)(2)(A), (a)(2)(B), (a)(4) and (a)(6).

**Jurisdiction and Venue**

117577660.1

1. This Court has jurisdiction over the instant action pursuant to 28 U.S.C. § 1334(a) and 28 U.S.C. § 157(b)(2)(I) as a core proceeding arising in a case under Title 11.[1]

2. Venue over the instant action properly lies in this Court pursuant to 28 U.S.C. § 1409(a) because this Complaint arises in the Debtor's Chapter 11 bankruptcy case.

3. Kapitus is a Virginia Corporation with its principal place of business at 2500 Wilson Boulevard, Suite 350, Arlington, VA 22201.

4. Christopher David Polk (the "Debtor") is a natural person and is a resident of the state of Georgia residing at 1651 Lighthouse Circle, Greensboro, GA 30642.

5. AGForest, LLC ("AGForest") is a Georgia limited liability company.

6. Pursuant to the Debtor's schedules, the Debtor was and is AGForest's 100% owner. Upon information and belief, the Debtor controlled AGForest and made all decisions and statements to Plaintiff relevant to the issues herein.

### The Revenue Based Factoring Agreement

7. Pursuant to the Revenue Based Factoring Agreements dated June 14, 2016 and September 13, 2016 and the Security Agreement and Guaranty, and Appendix A regarding the Fee Structure, all of which are expressly incorporated by reference into the Revenue Based Factoring Agreements (collectively, the "Agreements"), Plaintiff purchased $110,400.00 in AGForest's receivables. Copies of the Agreements are attached as **Composite Exhibit A**.

8. Under the Agreements, Kapitus purchased AGForest's business receivables in the amount

---

[1] Notwithstanding any of the allegations and claims herein, the institution of this Adversary Proceeding, the filing of this complaint and any other appearance in this Adversary Proceeding and in the above-referenced bankruptcy case (the "Bankruptcy Case"), including the submission of motions, opposition papers, and entry of orders, is without waiver, and express reservation, of any and all of Kapitus' rights, defense and remedies available at law and in equity, including, without limitation, under the Agreements (as defined below), Uniform Commercial Code, any other applicable federal or state law and/or commercial code, and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. If and when SFSI shall file a proof of claim in the Bankruptcy Case (the "Proof of Claim"), SFSI expressly incorporates any reservation of rights that it shall incorporate in the Proof of Claim.

117577660.1

of $110,400.00 (the "Receipts Purchased Amount") in exchange for the purchase price of $80,000.00 ($40,000.00 under each agreement) (the "Purchase Price"). The Debtor personally guaranteed AGForest's full performance of all terms and obligations under the Agreements (the "Guarantys"). Agreements, p. 6-7.

9. Under the Agreements, the Debtor and AG Forest agreed to irrevocably authorize only one depositing account acceptable to Plaintiff (the "Account") to remit 12% and 14%, respectively, (the "Specified Percentage") of AGForest's future receipts, accounts, contact rights and other obligations arising from or relating to the payment of monies from AGForest's customers or third-party payors, whether paid by cash, check, electronic transfer or other method (collectively, the "Receivables"), until such time as Plaintiff receives payment in full of the Receipts Purchased Amount.

10. The Debtor and AGForest also agreed and authorized Plaintiff to ACH Debit $219.00 and $239.00, respectively, on a daily basis (the "Specified Daily Amounts") from AGForest's Account each day until Plaintiff had received payment in full of the Receipts Purchased Amount.

11. **The Agreement further emphasized that "ANY MISREPRESENTATION MADE BY MERCHANT OR OWNER IN CONNECTION WITH THIS AGREEMENT MAY CONSTITUTE A SEPARATE CAUSE OF ACTION FOR FRAUD OR INTENTIONAL FRAUDULENT INDUCEMENT TO OBTAIN FINANCING." Agreement at p. 1 (emphasis in original).**

12. Plaintiff justifiably relied on these representations by the Debtor and AGForest in agreeing to transfer the Purchase Price to AGForest.

13. The Debtor and AGForest also made the following representations and

3

117577660.1

warranties to Plaintiff via the Agreements, each of which Plaintiff relied upon to provide financing to AGForest:

2.1 **Financial Condition and Financial Information.** Merchant represents, warrants and covenants that as of this date and during the term of this Agreement:] its bank and financial statements, copies of which have been furnished to FUNDER, and future statements which will be furnished hereafter at the discretion of FUNDER, fairly represent the financial condition of Merchant at such dates, and since those dates there has been no material adverse changes, financial or otherwise, in such condition, operation or ownership of Merchant. Merchant has a continuing, affirmative obligation to advise FUNDER of any material adverse change in its financial condition, operation or ownership. FUNDER may request statements at any time during the performance of this Agreement and the Merchant shall provide them to FUNDER within 5 business days. Merchant's failure to do so is a material breach of this Agreement.

2.7 **Daily Batch Out.** Merchant will batch out receipts with the Processor on a daily basis.

2.9 **No Bankruptcy or Insolvency.** As of the date of this Agreement, Merchant represents that it is not insolvent and does not contemplate and has not filed any petition for bankruptcy protection under Title 11 of the United States Code and there has been no involuntary petition brought or pending against Merchant. Merchant further warrants that it does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it. In the event that the Merchant files for bankruptcy protection or is placed under an involuntary filing Protections 2 and 3 are immediately invoked.

2.10 **Additional Financing. Merchant shall not enter into any arrangement, agreement or commitment for any additional financing, whether in the form of a purchase of receivables or a loan to the business with any party other than FUNDER without their written permission.**

2.11 **Unencumbered Receipts.** Merchant has good, complete and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with or adverse to the interest of FUNDER.

117577660.1

  2.12 **Business Purpose.** Merchant is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement for business purposes and ·not as a consumer for personal, family or household purposes.

**The Debtor's Representations Regarding AGForest's Financial Status**

  14. On September 10, 2016, prior to entering into the September 13 Agreement, and in order to induce Plaintiff to provide funding to AGForest and Debtor, the Debtor filled out and signed an application for alternative financing from the Plaintiff (the "Application"). The Application is attached as **Exhibit B**. In the Application, the Debtor represented that AGForest had significant annual gross sales of $1,500,000.00 to cover the repayment amount under the Agreements.

  15. Similarly, on June 15, 2016, prior to the transferring the Purchase Price to AGForest, the Debtor again stated to Plaintiff, on a recorded Pre-Funding call, that AGForest was not in arrears on any loans or any financial insitutions. . The Debtor also stated that he did not anticipate closing AGForest for any reason over the next 12 months. In addition, the Debtor stated that he was not planning to file for bankruptcy and that he was unaware of any reason to believe that AGForest or the Debtor would need to file for Bankruptcy protection in the foreseeable future. The Debtor acknowledged that any untruthful statement he made on the call could give rise to a fraud claim. The relevant portions of the Pre-Funding call are transcribed below:

> Plaintiff Representative: "Do you anticipate on closing your business for any reason over the next 12 months including vacations, renovations, seasonalities or slow business periods?"
>
> Debtor: "No."
>
> Plaintiff Representative: "Have you been planning to file or do you know of any

reason to believe that your business will need to file for bankruptcy protection in the foreseeable future?"

Debtor: "No."

Plaintiff Representative: "Are you in arrears on any loans or with any financial insitutions?

Debtor: "No."

Plaintiff Representative: "Do you recognize that if you were to make a false statement or if you were to misrepresent yourself, that it could constitute fraud and could subject you to legal action?"

Debtor: "Yes."

16.    Then again on September 16, 2016, prior to the transferring $40,000.00 to AGForest in respect of the September 13, 2016 Agreement, the Debtor again stated to Plaintiff, on a recorded Pre-Funding call, that he did not anticipate closing AGForest for any reason over the next 12 months. In addition, the Debtor stated that he was not planning to file for bankruptcy and that he was unaware of any reason to believe that AGForest or the Debtor would need to file for Bankruptcy protection in the foreseeable future. The Debtor acknowledged that any untruthful statement he made on the call could give rise to a fraud claim. The relevant portions of the Pre-Funding call are transcribed below:

Plaintiff Representative: "Do you anticipate on closing your business for any reason over the next 12 months including vacations, renovations, seasonalities or slow business periods?"

Debtor: "No."

Plaintiff Representative: "Are you in arrears on any loans or with any financial

6

117577660.1

insitutions?

Debtor: "No."

Plaintiff Representative: "Do you currently have a balance with any other working-capital provider?"

Debtor: "No."

Plaintiff Representative: "Do you recognize that if you were to make a false statement or if you were to misrepresent yourself, that it could constitute fraud and could subject you to legal action?"

Debtor: "Yes."

17. According to Debtor's Schedules E/F and H (Doc. No. 27), AGForest may have had significant business debts, including judgments and tax liabilities.

18. Upon information and belief, the Debtor and AGForest owed many of these balances to the scheduled creditors at the time the Debtor filled out the Application and participated in the Pre-Funding Call.

## AGForest's Immediate Default

19. On June 15, 2016, Plaintiff wire transferred to AGForest $40,000.00, less deductions for funding-related expenses as required under the Agreements, in reliance on the Debtor's statements in the Agreement, and on the Pre-Funding call.

20. Plaintiff then again on September 19, 2016, wire transferred to AGForest $40,000.00, less deductions for funding-related expenses as required under the Agreements, in reliance on the Debtor's statements in the Application, the Agreements, and on the Pre-Funding call.

21. Pursuant to the terms of the Agreements, the Plaintiff was to collect $219.00 and $239.00, respectively, per day from AGForest via ACH debits. The Agreements required that

7

AGForest use the Account from which the ACH debits would be transferred. Plaintiff transferred the Purchase Price into the Account. Pursuant to the Agreement, AGForest was to maintain the Account with sufficient funds to cover later payments to Plaintiff. Plaintiff relied on such representations to transfer the Purchase Price to AGForest.

22. The Debtor represented to Plaintiff that AGForest would honor the Agreements by using the Account in order to repay Plaintiff.

23. However, upon information and belief, the Debtor never had any intention to honor the Agreements and Guarantys nor any intent to remit the Receipts Purchased Amount to Plaintiff.

24. AGForest almost immediately defaulted on its payment obligations under the September 13, 2016 Agreement. In fact, on October 13, 2016 the Debtor stopped the ACH debits for both of the Agreements. Thereafter, Debtor filed for Chapter 11 bankruptcy protection, preventing the Plaintiff from debiting any subsequent ACH payments from the Account. No other payments were ever made under the Agreements.

25. In all, AGForest paid just $3,107.00 in Receivables to Plaintiff in connection with the September 19, 2016 wire transfer and $17,958.00 in connection with the June 15, 2016 wire transfer.

26. Appendix A to the Agreements and Guaranty provide for a $5,000.00 "Default" fee to be applied to the Receipts Purchased Amounts under each Agreement in the event of a default. In addition, there is a blocked account fee in the amount of $2,500.00 to be applied to the Receipts Purchased Amounts for each Agreement. Appendix A also provides for other fees for Rejected ACH or NSF.

27. Further, pursuant to Paragraph 3.3 of the Agreements, Plaintiff is entitled to its

8

attorney's fees and costs in connection with this litigation.

## COUNT I
### (Non-dischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(2)(A))

28. Plaintiff repeats and realleges paragraphs 1 through 27 and incorporates the same as though set forth herein.

29. Plaintiff believes and alleges that the Debtor caused AGForest to enter into the Agreements with the specific intent not to pay the Receipts Purchased Amount to Plaintiff. In addition, Plaintiff believes and alleges that the Debtor made false statements to Plaintiff with the intent to induce Plaintiff to enter into the Agreements to purchase AGForest's Receivables.

30. AGForest immediately defaulted on its payment obligations under the September 13, 2016 Agreement. Within weeks after the Plaintiff deposited $40,000.00 into the Account with regard to the September 13, 2016 Agreement and several months after the June 14, 2016 Agreement, the Debtor caused AGForest (i) stop the ACH debits on the Account thereby preventing Plaintiff from debiting any further ACH payments as required under the Agreements while, upon information and belief continuing to operate AGForest; and (ii) ultimately to file for Chapter 11 bankruptcy, preventing further payments to Plaintiff.

31. The Debtor also engaged in the following conduct:

   a. In the Application, the Debtor represented that AGForest had annual gross sales of $1,500,000.00.

   b. In the June 15, 2016 and September 16, 2016 Pre-funding calls, the Debtor represented to Plaintiff that AGForest was not in arrears on any business obligations. The Plaintiff justifiably relied on these representations to

9

    transfer the Purchase Price to AGForest.

c. In the Agreements, the Debtor and AGForest represented to Plaintiff that AGForest intended to use the Purchase Price for business purposes. Specifically, the Debtor and AGForest represented to Plaintiff that it was entering into the Agreements for business purposes and not as a consumer for personal, family or household purposes. Plaintiff justifiably relied on these representations to enter into the Agreements and purchase AGForest's receivables.

d. The Debtor and AGForest also made the following representations and warranties to Plaintiff in the Agreements, each of which Plaintiff relied upon to agree to purchase AGForest's Receivables and transfer the Purchase Price to AGForest:

2.1 **Financial Condition and Financial Information.** Merchant represents, warrants and covenants that as of this date and during the term of this Agreement:] its bank and financial statements, copies of which have been furnished to FUNDER, and future statements which will be furnished hereafter at the discretion of FUNDER, fairly represent the financial condition of Merchant at such dates, and since those dates there has been no material adverse changes, financial or otherwise, in such condition, operation or ownership of Merchant. Merchant has a continuing, affirmative obligation to advise FUNDER of any material adverse change in its financial condition, operation or ownership. FUNDER may request statements at any time during the performance of this Agreement and the Merchant shall provide them to FUNDER within 5 business days. Merchant's failure to do so is a material breach of this Agreement.

2.7 **Daily Batch Out.** Merchant will batch out receipts with the Processor on a daily basis.

2.9 **No Bankruptcy or Insolvency.** As of the date of this Agreement, Merchant represents that it is not insolvent and does not contemplate and has not filed any petition for bankruptcy protection under Title 11 of the United States Code and there has been no involuntary petition brought or

10

pending against Merchant. Merchant further warrants that it does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it. In the event that the Merchant files for bankruptcy protection or is placed under an involuntary filing Protections 2 and 3 are immediately invoked.

2.10    **Additional Financing. Merchant shall not enter into any arrangement, agreement or commitment for any additional financing, whether in the form of a purchase of receivables or a loan to the business with any party other than FUNDER without their written permission.**

2.11    **Unencumbered Receipts.** Merchant has good, complete and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with or adverse to the interest of FUNDER.

2.12    **Business Purpose.** Merchant is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement for business purposes and ·not as a consumer for personal, family or household purposes.

32.    Plaintiff was to collect $219.00 and $239.00, respectively, per day from AGForest via ACH debits. Plaintiff transferred the Purchase Price into this Account. Pursuant to the Agreement (p. 1), AGForest was to maintain the Account with sufficient funds to cover later payments to Plaintiff. Plaintiff relied on these representations to transfer the Purchase Price to AGForest and enter into the Agreements.

33.    However, upon information and belief, the Debtor never had any intention to honor the Agreements, pay Plaintiff the Receipts Purchased Amount, nor any intent to use the Purchase Price for business purposes.

34.    On September 19, 2016, AGForest received $40,000.00 from Plaintiff based on Plaintiff's reliance on Debtor's false and fraudulent statements and acts.

35.    AGForest almost immediately defaulted on its payment obligations

11

117577660.1

under the September 13, 2016 Agreement and also defaulted under the June 14, 2016 within a few months of its execution. Thereafter, AGForest filed for Chapter 11 bankruptcy, preventing the Plaintiff from debiting any subsequent ACH payments from the Account.

36. As fully detailed above, at the time the representations and/or material omissions were made, Debtor knew the Debtor's representations and omissions were false, untrue, misleading, and, as a direct and proximate cause of these intentional misrepresentations and omissions, the Debtor knew that Plaintiff would be induced to tender the Purchase Price under the Agreements.

37. As detailed above, Debtor intended to induce Plaintiff to act or refrain from acting upon the Debtor's representations and/or material omissions, and Plaintiff justifiably relied upon such false representations and omissions.

38. Plaintiff suffered damages as a direct and proximate consequence of the misrepresentations and/or material omissions made by Debtor.

39. As a result of the misrepresentations and/or material omissions made by Debtor, Debtor obtained from Plaintiff the Purchase Price under the Agreements, which would not have been authorized by Plaintiff if the misrepresentations had not been made, or material facts that were omitted and concealed, were actually disclosed.

40. The Debtor's statements and acts described above constitute conduct to obtain money by false pretenses, false statements or actual fraud.

41. The Debtor's debt to Plaintiff is a debt for money, property, services, or an extension, renewal, or refinancing of credit, obtained by false pretenses, a false representation, or actual fraud, and is non-dischargeable.

42. Thus, Plaintiff is entitled to an Order from this Court declaring that, pursuant to

117577660.1

11 U.S.C. § 523(a)(2)(A), Debtor's debt to Plaintiff is non-dischargeable, and a judgment for money damages as may be proven at trial.

## COUNT II
### (Non-dischargeability of Debtor Pursuant to 11 U.S.C. § 523(a)(2)(B))

43. Plaintiff repeats and realleges paragraphs 1 through 42 and incorporates the same as though set forth herein.

44. Pursuant to 11 U.S.C. § 523(a)(2)(B), a debt in which a debtor obtains money by a statement in writing that is materially false respecting an insider's financial condition, on which the creditor reasonably relied, and which the debtor caused to be published with intent to deceive is non-dischargeable.

45. The Debtor and AGForest, an insider of the Debtor, did obtain money from Plaintiff by the following written materially false statements in the Agreement respecting AGForest's financial condition on which Plaintiff reasonably relied, among others:

> 2.1 **Financial Condition and Financial Information.** Merchant represents, warrants and covenants that as of this date and during the term of this Agreement:] its bank and financial statements, copies of which have been furnished to FUNDER, and future statements which will be furnished hereafter at the discretion of FUNDER, fairly represent the financial condition of Merchant at such dates, and since those dates there has been no material adverse changes, financial or otherwise, in such condition, operation or ownership of Merchant. Merchant has a continuing, affirmative obligation to advise FUNDER of any material adverse change in its financial condition, operation or ownership. FUNDER may request statements at any time during the performance of this Agreement and the Merchant shall provide them to FUNDER within 5 business days. Merchant's failure to do so is a material breach of this Agreement.
>
> 2.7 **Daily Batch Out.** Merchant will batch out receipts with the Processor on a daily basis.
>
> 2.9 **No Bankruptcy or Insolvency.** As of the date of this Agreement, Merchant represents that it is not insolvent and does not contemplate and has not filed any petition for bankruptcy protection under Title 11 of the

United States Code and there has been no involuntary petition brought or pending against Merchant. Merchant further warrants that it does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it. In the event that the Merchant files for bankruptcy protection or is placed under an involuntary filing Protections 2 and 3 are immediately invoked.

2.10    **Additional Financing. Merchant shall not enter into any arrangement, agreement or commitment for any additional financing, whether in the form of a purchase of receivables or a loan to the business with any party other than FUNDER without their written permission.**

2.11    **Unencumbered Receipts.** Merchant has good, complete and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with or adverse to the interest of FUNDER.

2.12    **Business Purpose.**  Merchant is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement for business purposes and ·not as a consumer for personal, family or household purposes.

46.    Moreover, in the written Application, the Debtor represented that AGForest had annual gross sales of $1,500,000.00.

47.    The Debtor's conduct described above constitutes obtaining money by materially false written statement regarding an insider's financial condition, on which Plaintiff relied, and which the Debtor made with the intent to deceive.

48.    As set forth above, at the time the time the representations were made, Debtor knew these representations were materially false, untrue and misleading.

49.    Debtor caused these false statements to be made in writing, including, but not limited to, publishing such statements in the Application and Agreement.

50.    AGForest is an insider of the Debtor, because, at the time, Debtor served as owner, managing member, and/or person in control of AGForest, within the meaning of

"insider" under 11 U.S.C. § 101(31)(A)(iv).

51. Plaintiff reasonably relied on these written statements made by the Debtor in deciding to transfer the Purchase Price under the Agreements.

52. Plaintiff suffered damages as a direct and proximate consequence of the materially false statements made by Debtor.

53. As a result of these materially false written statements by Debtor, Debtor obtained from Plaintiff the Purchase Price under the Agreements from Plaintiff, which would not have been authorized by Plaintiff if the materially false statements had not been made.

54. Consequently, the Debtor's debt to Plaintiff is one for money obtained by materially false written statement regarding an insider's financial condition, on which Plaintiff relied, and which the Debtor made with intent to deceive, and is non-dischargeable, and Plaintiff is therefore entitled to an Order from this Court declaring that Debtor's debt to Plaintiff is non-dischargeable and a judgment for money damages as may be proven at trial.

## COUNT III
**(Non-dischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(4))**

55. Plaintiff repeats and realleges paragraphs 1 through 54 and incorporates the same as though set forth herein.

56. The Debtor's liability to Plaintiff alleged herein, is a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" within the meaning of 11 U.S.C. § 523(a)(4).

57. Plaintiff believes and alleges that the Debtor entered into the Agreements with the specific intent to take the Purchase Price under the Agreements from the Plaintiff without any intent to remit the Receivables to Plaintiff as it agreed to do under the terms of the Agreements.

15

117577660.1

58. On June 14, 2016 and September 19, 2016, Plaintiff transferred to AGForest $80,000.00, less deductions for funding-related expenses as required under the Agreements, in reliance on the Debtor's statements in the Application, the Agreements, and the Pre-funding calls.

59. AGForest immediately defaulted on its payment obligations under the September 13, 2016 Agreement. Within weeks after the Plaintiff deposited $40,000.00 into the Account with regard to the September 13, 2016 Agreement and several months after the June 14, 2016 Agreement, the Debtor caused AGForest (i) to stop ACH debits on the Account thereby preventing Plaintiff from debiting any further ACH payments as required under the Agreements, while, upon information and belief continuing to operate AGForest; and (ii) ultimately to file for Chapter 11 bankruptcy, preventing further payments to Plaintiff.

60. The Debtor obtained the Purchase Price pursuant to the Agreements by committing fraud and defalcation while acting in a fiduciary capacity as the owner, managing member, shareholder, officer, and/or director of AGForest.

61. Upon information and belief, the Debtor misappropriated significant portions of the Purchase Price and Receivables for his own personal benefit by fraudulent intent or deceit.

62. Upon information and belief, the Debtor transferred the Purchase Price and/or Receivables into accounts not accessible by Plaintiff and/or blocked payment of the Receivables from the Account, which constitutes larceny.

63. Upon information and belief, the Debtor used the Purchase Price and Receivables without explanation, reason or purpose relating to AGForest's business.

64. Alternatively, the Debtor's misappropriation of the Purchase Price was

embezzlement because Plaintiff entrusted the Debtor with the funds and because the Debtor may have obtained control over such funds without authorization.

65. The Debtor's debt to Plaintiff is a debt for larceny or embezzlement because the Debtor stole the transferred Purchase-Price and Receivables with the intent not to remit the agreed-upon percentage of AGForest's Receivables and to permanently deprive the Plaintiff of the Purchase Price and Receivables.

66. The Plaintiff sustained damages as a result of Debtor's fraud and defalcation while acting as a fiduciary, his embezzlement, and/or his larceny of the funds. Thus, Plaintiff is entitled to an Order from this Court declaring that, pursuant to 11 U.S.C. § 523(a)(4), Debtor's debt to Plaintiff is non-dischargeable, and a judgment for money damages as may be proven at trial.

## COUNT IV
### (Non-dischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(6))

67. Plaintiff repeats and realleges paragraphs 1 through 66 and incorporates the same as though set forth herein.

68. Pursuant to Section 523(a)(6) of the Bankruptcy Code, a debt incurred by a debtor who engages in willful malicious conduct which results in damage shall be non-dischargeable.

69. Plaintiff believes and alleges that the Debtor entered into the Agreements with the specific intent not to use the Purchase Price for business purposes and not to remit any of AGForest's Receivables to Plaintiff as agreed. In addition, the Debtor made false statements to Plaintiff with the intent to induce Plaintiff to enter into the Agreements and transfer the Purchase Price.

70. AGForest immediately defaulted on its payment obligations under the

17

117577660.1

September 13, 2016 Agreement. Within weeks after the Plaintiff deposited $40,000.00 into the Account with regard to the September 13, 2016 Agreement and several months after the June 14, 2016 Agreement, the Debtor caused AGForest (i) to stop ACH debits on the Account thereby preventing Plaintiff from debiting any further ACH payments as required under the Agreements, while, upon information and belief continuing to operate AGForest; and (ii) ultimately to file for Chapter 11 bankruptcy, preventing further payments to Plaintiff.

71. Upon information and belief, the Debtor never had any intention to honor the Agreements.

72. The Debtor also engaged in the following willful and malicious acts, among others:

   a. The Debtor willfully and maliciously executed the Agreements in which he represented that AGForest's financial condition was accurately reflected in the documents produced to Plaintiff.

   b. The Debtor willfully and maliciously executed the Agreements in which he represented that he intended to use the funds from Plaintiff for business purposes in connection with AGForest.

   c. The Debtor willfully and maliciously represented to Plaintiff that he had no reason to believe that AGForest would need to file for bankruptcy protection in the foreseeable future.

   d. The Debtor willfully and maliciously represented to Plaintiff that AGForest was not in arrears on any loans or with any financial institutions.

   e. The Debtor willfully and maliciously made material omissions of fact that induced Plaintiff into transferring the funds to AGForest, such as failing to

disclose that he did not intend to remit AGForest's Receivables or the total Receipts Purchased Amount to Plaintiff.

    f. Plaintiff transferred the Purchase Price to AGForest based on the Debtor's false and fraudulent statements and acts.

73. The Debtor's activities described herein constitute willful and malicious conduct which resulted in damage to Plaintiff.

74. Consequently, the Debtor's debt to Plaintiff was incurred by the Debtor, who engaged in willful and malicious conduct which resulted in damage to Plaintiff and is non-dischargeable. Thus, Plaintiff is entitled to an Order from this Court declaring that, pursuant to 11 U.S.C. § 523(a)(6), Debtor's debt to Plaintiff is non-dischargeable, and a judgment for money damages as may be proven at trial.

WHEREFORE, Plaintiff prays for entry of judgment against the Debtor, as follows:

    a. in the principal amount of $122,847.49 plus applicable post-judgment interest;

    b. for attorneys' fees and costs herein incurred;

    c. that the amount owed by Debtor to Plaintiff is non-dischargeable in the instant bankruptcy case, in any other chapter under Title 7 to which this case may be converted, and in any future bankruptcy case filed by or against the Debtor; and

    d. for such other and further relief as this Court may deem just and proper.

Dated this 18th day of March, 2019. CARLTON FIELDS, P.A.

                                */s/ Justan C. Bounds*
                                Justan C. Bounds
                                Georgia Bar No. 339789
                                jbounds@carltonfields.com
                                1201 West Peachtree Street -Suite 3000
                                Atlanta, Georgia 30309
                                404-815-3400

117577660.1

*Attorneys for Plaintiff Kapitus Servicing, Inc.,
formerly known as Colonial Funding Network, Inc.*

20

117577660.1